# In the United States District Court
## for the Southern District of Georgia
### Brunswick Division

BRENDA L. BAKER,                    :          CIVIL ACTION

    Plaintiff,                     :

v.                                  :

INTERNATIONAL LONGSHOREMEN'S        :
ASSOCIATION, LOCAL 1423,
                                    :
    Defendant.                    NO. CV205-162

## O R D E R

Plaintiff, Brenda L. Baker, filed the above-captioned case against Defendant, International Longshoremen's Association, Local 1423 ("Local 1423" or the "union"), asserting federal employment discrimination claims for sexual harassment and retaliation.

Presently before the Court is the union's motion for summary judgment. Because genuine issues of material fact remain in dispute as to Baker's sexual harassment claims, the motion for summary judgment will be **DENIED** in part. Because Local 1423 is entitled to judgment as a matter of law with respect to Baker's retaliation claims, the motion will be **GRANTED** in part.

## BACKGROUND

Viewing the evidence in the light most favorable to Plaintiff, as the Court must on a summary judgment motion, the facts are as follows. Local 1423 is a labor organization representing longshoremen who work for various stevedoring companies in the Port of Brunswick, Georgia. The union operates through a collective bargaining agreement with the Georgia Stevedoring Association, which is a multi-employer trade group. Local 1423 refers laborers for work to shipping companies operating in the port.

Once on board the ship, union members work in "gangs" under the immediate supervision of a "header," loading or unloading the ship. Headers are selected with input from the union. Longshoremen are supposed to be selected for placement in gangs in order of their seniority. Longshoremen are subject to discipline under the union bylaws and the collective bargaining agreement if they use abusive language or if they sexually harass fellow union members.

Brenda Baker, a union member, claims that several members of Local 1423, including her co-workers and supervisors, sexually harassed her on a continuing basis from 1993 through the time this complaint was filed on August 16,

2

2005, and thereafter. The union members she accuses of this conduct are Willie Bacon, Willie Merrell, Terrell Carmena, Ervin Flowers, Maxie Mingo, Joe Howard, Sinclair Bacon, Chris Atkinson, Keith Tobias, Lee Butler, and Richard Cash.

According to Baker, she experienced sexual harassment on an ongoing, frequent basis from all of these men. The men sexually propositioned Baker on the job, made lewd and suggestive sexual comments to her, touched her, threatened not to hire her, or to otherwise retaliate against her if she did not sleep with them or if she continued to report that they engaged in sexual harassment. See Dkt. No. 22, at 30-32 of 54, according to the Court's electronic docket. In addition, Baker accuses Local 1423 president, Winford Hill, Jr., and the business agent, James C. Reid, Jr., of ignoring her complaints of harassment.

According to Baker, Header Willie Bacon demanded sex in exchange for hiring her for jobs about a dozen times during the fall of 2004. When Baker refused, Bacon would not hire her. Bacon also made innumerable, lewd sexual requests not tied to any tangible employment action, and Baker claims that these comments contributed toward a hostile work environment.

3

In 2004, Carmena asked Baker for sex, and then became angry when she refused. On August 20, 2004, Howard told Baker that she should have sex with him then, because he knew she wanted a younger man. Also on that date, Sinclair Bacon (brother of Willie Bacon) told co-workers that Baker liked to be tied to the bed and have kinky sex, that she did not wear any underwear, and that she and Rhonda Jimerson were lesbians. Four days later, Sinclair Bacon stated to co-workers that Baker liked to be tied up and that she had sex with multiple partners at once.

In June of 2004, Header Willie Merrell told her that he had a friend who wanted to have sex with a "bright-skinned lady" and that his friend was willing to pay $2,000. Merrell told Baker that he wanted half of that sum, and then laughed. Baker also reported that, on April 18, 2005, Merrell told a co-worker that he, Merrell, wanted to have sex with Baker. On June 4 and 21, 2005, Baker reported that Merrell propositioned her for sex lewdly.

Also in June 2005, Mango tried to rub Baker's leg while the two were in a van at work, but Baker pushed him away. On June 23, 2005, Mango asked Baker to lick her lips, and told her it would make him cum if she did. Also on that day,

4

Atkinson expressed his sexual prowess and bravado to Baker. On August 5, 2005, Atkinson told Baker that he knew she had "a good one" and a "hot box." Also on that day, Tobias sexually propositioned Baker.

According to Baker, Mango and Flowers told Baker on numerous occasions, over a number of years, that they wanted to have sex with her, and Flowers often attempted to hold her hand at work and put his hand on her knee. On June 2, 2005, Flowers also suggested to Baker that she would go "missing in action" because of her averments of sexual harassment.

On August 5, 2005, Lee Butler told Baker that if someone reported him for sexual harassment, that person would lose their job with the union. Viewing the evidence in the light most favorable to Baker, on August 6, 2005, Richard Cash sexually propositioned Baker, and offered her his paycheck in return.[1]

---

[1] Baker further submits that her supervisors often threatened to take adverse employment actions against her based on her association with Jimerson, a co-worker who was complaining of sex discrimination by these men and their co-workers. Viewing the evidence in the light most favorable to Plaintiff, on numerous occasions, Bacon attempted to ostracize Jimerson by threatening not to hire Baker if Baker continued to hang around Jimerson.

An employee's good faith belief that she was the victim of an unlawful employment practice must be objectively reasonable to allow her to recover. In addition, that belief must be "measured against substantive law at the time of the offense." Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1187 (11th Cir. 2001).

Plaintiff has not cited any cases in support of the idea that showing solidarity with a complaining co-worker is itself an act of

5

AO 72A
(Rev. 8/82)

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in his favor. . . ", United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal quotation marks omitted).

---

opposition, and the Court is aware of no cases to that effect. See Van Orden v. Wells Fargo Home Mortg., Inc., 443 F. Supp. 2d 1051, 1063-64 (S.D. Iowa 2006); EEOC v. HBE Corp., 135 F.3d 543, 554 (8th Cir. 1998); but see Barbara J. Flagg, Subtle Opposition, 34 Colum. Hum. Rts. L. Rev. 605, 612 (2003).

Accordingly, Baker's conduct in refusing to disassociate with Jimerson does not form the predicate for any actionable retaliation. Yet, non-sexual behavior may comprise part of a sexual harassment claim when that behavior "could well be viewed as work-sabotaging behavior that creates a hostile work environment." Williams v. Gen. Motors Corp., 187 F.3d 553, 564 (6th Cir. 1999).

6

AO 72A
(Rev. 8/82)

## DISCUSSION

### A. Quid Pro Quo Claim

To establish a <u>quid pro quo</u> sex discrimination claim, a plaintiff must demonstrate that giving into an employer's sexual demands is the cost of gaining a job benefit or avoiding an adverse employment action. <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 65 (1986). An <u>unfulfilled</u> threat of an adverse employment action based on a sexual demand does not support a <u>quid pro quo</u> claim, but instead constitutes evidence that may establish a hostile work environment. <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 751-52 (1998).

Plaintiff testified during her deposition that Bacon demanded sex in exchange for hiring her on several occasions from the summer of 2004 through October 20, 2004. Baker testified that on some occasions she acceded to Bacon's demands, but that other times she did not. Baker stated that when she did not have sex with Bacon, he would not hire her. The Court notes that Baker has testified that she had a consensual, occasional sexual relationship for several years with Bacon, and that this relationship ended in 2003 or

AO 72A
(Rev. 8/82)

2004.[2]  Dkt. No. 24, Ex. D, Baker Dep. 94 (Mar. 21, 2006).
Baker asserts that after she terminated that relationship,
Bacon continued to demand sex, and refused to hire her when
she refused.  Dkt. No. 24, Ex. C, Baker Dep. 53-54 (Jan. 19,
2006); Dkt. No. 24, Ex. D, Baker Dep. 98-99 (Mar. 21, 2006).

According to Baker, Bacon demanded sex in exchange for
a job from Baker from June 7, 2003, until Bacon lost his
header position on October 20, 2004.  There is evidence in
this case that Bacon would sometimes get Baker jobs that she
was not entitled to receive, due to her lack of seniority.
Other evidence suggests that when Baker refused Bacon's
sexual overtures, Bacon would not give Baker jobs she was
entitled to receive.

If the jury finds that Baker got preferential treatment
because she had sex with Bacon, and that Bacon quit giving
her special consideration in hiring decisions once she ended
that relationship, Defendant would be entitled to prevail on
the quid pro quo claim.   If those facts are established,

---

[2]  Contrary to Defendant's characterization of Baker's deposition
testimony, Baker denied having a sexual relationship with Bacon during
2005.   Dkt. No. 32 at 2-3.   Instead, Baker testified that their
relationship ended in 2004.  Dkt. No. 24, Ex. D, Baker Dep. 94-99 (Mar.
21, 2006).  While there is evidence that Baker's daughter leased a car
from Bacon during 2005, that does not establish that Bacon's alleged
sexual demands were welcome at that time.

8

AO 72A
(Rev. 8/82)

there would have been no tangible employment action taken against Bacon because she was not entitled to the benefits she was receiving in the first place. Also, Baker would not have been treated differently because of her gender, but because she decided to cease having sex with Bacon. On the other hand, if the jury determines that Baker lost employment opportunities she was otherwise entitled to receive because she would not have sex with Bacon, Baker would have a viable quid pro quo claim.

"The question whether particular conduct was indeed unwelcome presents difficult credibility determinations committed to the trier of fact." Meritor Sav. Bank, FSB, 477 U.S. at 68. While it is true that the union may be able to convince a jury that certain conduct by Bacon was motivated by their past romantic involvement, not by Baker's sex, the Court does not find as much as a matter of law. See Succar v. Dade County Sch. Bd., 229 F.3d 1343, 1345 (11th Cir. 2000)(a personal feud is not sex discrimination). In contrast to Succar, there is some evidence that Bacon harassed Baker because she was a woman. If Bacon's harassment of Baker was motivated by her refusal to have a sexual relationship with him, as Plaintiff asserts, he does

9

not get a "free pass" for such conduct simply because he once had a romantic relationship with her.  Lipphardt, 267 F.3d at 1188-89.  Because genuine issues of material fact remain in dispute as to the quid pro quo claim, summary judgment is not warranted in Defendant's favor as to this claim.

## B. Hostile Work Environment Claim

> Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1). . . .  When the workplace is permeated with "discriminatory intimidation, ridicule, and insult," 477 U.S. at 65, that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," id., at 67 (internal brackets and quotation marks omitted), Title VII is violated.

> This standard . . . takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury.

Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 23 (1993).

> [W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

AO 72A
(Rev. 8/82)

whether it unreasonably interferes with an
employee's work performance.

Id. at 23.  No single factor is determinative.  Id.


1.  The Severity or Pervasiveness of the Harassment

The Court rejects Local 1423's attempt to view any of

the relevant statements or acts in isolation.  Rather,

governing law instructs that the Court must consider the

incidents together.  Id.  "[A] long line of cases showing

that sexual asides and insinuations are the well-worn tools

of a sexual harasser." Frederick v. Sprint/United Mgmt. Co.,

246 F.3d 1305, 1312 (11th Cir. 2001).  The Court does not

find that sexual harassment involved in this case amounted

only to "mere offensive utterances" as a matter of law.  A

reasonable jury could find that Baker suffered severe or

pervasive harassment, which would entitle her to recover.

In a case where Plaintiff gives a number of examples of

the harassment that occurred over a long time period, and she

claims the harassment was commonplace and frequent, her claim

is not barred by her inability to recall every last instance

of sexual harassment.  Abeita v. TransAmerica Mailings, Inc.,

159 F.3d 246, 252 (6th Cir. 1998).

11

Defendant's admission that course language and sexual remarks and innuendo are pervasive at the docks supports Plaintiff's case. Contrary to Defendant's suggestion, the whole point of hostile work environment liability means that Baker need not "get used to it." At least in this circuit, the "social context" of a "heavily polluted" workplace does not excuse the harassment or render it non-actionable. See Robinson v. Jacksonville Shipyards, Inc., 760 F. Supp. 1486, 1525-26 (M.D. Fla. 1991); Walker v. Ford Motor Co., 684 F.2d 1355, 1359 (11th Cir. 1982); Dkt. No. 24, Ex. C, Baker Dep. 68-69 (Jan. 19, 2006).

> The "social context" argument cannot be squared with Title VII's promise to open the workplace to women. When the pre-existing state of the work environment receives weight in evaluating its hostility to women, only those women who are willing to and can accept the level of abuse inherent in a given workplace -- a place that may have historically been all male or historically excluded women intentionally -- will apply to and continue to work there. It is absurd to believe that Title VII opened the doors of such places in form and closed them in substance. A pre-existing atmosphere that deters women from entering or continuing in a profession or job is no less destructive to and offensive to workplace equality than a sign declaring "Men Only." As the Fifth Circuit recently observed, "Work environments 'heavily charged' or 'heavily polluted' with racial or sexual abuse are at the core of the hostile environment theory."

12

Robinson, 760 F. Supp. at 1526 (quoting Wyerick v. Bayou
Steel Corp., 887 F.2d 1271, 1275 (5th Cir. 1989)).

## 2. Whether Baker Was, or a Reasonable Person Would Have Been, Affected Detrimentally by the Harassment

Second, Defendant contends that Baker was not affected
adversely by any harassment, and that a reasonable person
would not have been bothered by the workplace conduct she
experienced. The union posits that because Baker missed no
time from work, did not seek medical treatment for her work-
related stress, and because her quality of work did not
suffer, the harassment did not alter the terms or conditions
of her employment. See Harris, 510 U.S. at 21-23 (to
constitute a hostile work environment, the workplace must be
objectively and subjectively offensive).

The Court notes that "interference with the employee's
work performance" is merely one factor that the Court must
evaluate in determining whether the sexual harassment was
actionable. Absenteeism from work and psychological
counseling are not the sine qua non of a hostile work
environment claim. The law takes a "middle path" and does
not require conduct that would cause "a tangible

13

psychological injury" to establish a hostile work environment claim.  Id. at 23.

According to Baker's affidavit, she has "been upset, humiliated, concerned, my sleep has been affected, and my appetite has been affected[,]" all due to stress caused by workplace discrimination.  Dkt. No. 26, Ex. 2, Baker Aff. ¶ 2.  Defendant maintains that the Court cannot consider this "sham" affidavit.  However, this is not a case where a non-movant has submitted a self-serving affidavit with a conclusory statement that plainly conflicts with clear deposition testimony, in response to an unambiguous question.

Under those circumstances, a later affidavit cannot create a genuine issue of fact for trial.  E.g., Lowie v. Raymark Indus., 676 F. Supp. 1214, 1216-17 (S.D. Ga. 1987); Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984); Kennett-Murray Corp., v. Bone, 622 F.2d 887, 893-95 (5th Cir. 1980).[3]  Although Baker's affidavit does present new information, it does not conflict with her deposition testimony.

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

14

If what Baker avers is true, this would be sufficient to entitle her to recover. "A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." Harris, 510 U.S. at 22. The Court declines to find that the acts detailed by Baker would not have had a detrimental effect on a reasonable person as a matter of law.

### 3. The Union's Liability

The employer, or labor organization, may be vicariously liable when a supervisor of the victimized employee creates a hostile work environment. When no adverse employment action is taken against the victim of harassment, the defending organization or entity may raise an affirmative defense to escape liability. To prevail, the labor organization must show (1) that it used "reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) that the employee acted unreasonably in failing to avail herself of the union's preventive and

AO 72A
(Rev. 8/82)

corrective opportunities. <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 765 (1998); <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 807 (1998).

"An employer may, for example, have provided a proven, effective mechanism for reporting and resolving complaints of sexual harassment, available to the employee without undue risk or expense. If the plaintiff unreasonably failed to avail herself of the employer's preventive or remedial apparatus, she should not recover damages that could have been avoided if she had done so." <u>Id.</u> at 806-07.

> "[A]s to the first part of the first element of the <u>Faragher/Ellerth</u> affirmative defense, an employer does not always have to show that it has a formal sexual harassment policy to meet its burden of proof on this element. <u>See Lissau v. Southern Food Serv.</u>, 159 F.3d 177, 183 (4th Cir. 1998) (recognizing that small employers may show that they exercised reasonable care to prevent and correct sexual harassment through more informal complaint mechanisms). At the same time, an employer's showing that it has a sexual harassment policy does not automatically satisfy its burden. <u>See, e.g.</u>, <u>Faragher</u>, 524 U.S. at 808, 118 S. Ct. 2275 (denying an employer the affirmative defense because although it had a sexual harassment policy it had "entirely failed to disseminate that policy"). As to the second part of the first element of the <u>Faragher/Ellerth</u> affirmative defense, an employer need not act instantaneously, but must act in a reasonably prompt manner to respond to the employee's complaint. <u>Madray v. Publix Supermarkets, Inc.</u>, 208 F.3d 1290, 1302 (11th. Cir. 2000)."

16

Frederick, 246 F.3d at 1313-14.

Because Bacon and Merrell were Baker's supervisors, the union has the burden of proving that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and . . . that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities[.]" Ellerth, 524 U.S. at 765.

In contrast, when the harassment is perpetrated by a co-worker, the employee has the burden of proving that the employer or labor organization knew or should have known about the harassing conduct. If the plaintiff can demonstrate that the defendant acted negligently in failing to correct the co-workers' harassment, then the union may be responsible for the co-workers' conduct. Breda v. Wolf Camera & Video, 222 F.3d 886, 889 (11th Cir. 2000).

Local 1423 argues that, with respect to all the conduct complained of by Baker, including the comments made by supervisors and co-workers, it exercised reasonable care to prevent harassment and to eliminate it when it occurred, and that Baker failed to act with reasonable care to take advantage of the union's established safeguards to prevent harassment. The union emphasizes that the bargaining

17

agreement between Local 1423 and Georgia Stevedoring Association prohibits harassment, and provides a mechanism for an employee to file a grievance regarding such conduct with Local 1423. Local 1423 argues that it is entitled to a complete affirmative defense under Faragher/Ellerth. The Court disagrees.

According to the testimony of Hill, when a union member complains to a union officer of harassment orally, the officer will speak to the offending party in an attempt to resolve the grievance informally. If the harassment continues, the union officer asks the victim of the harassment to pursue a formal written grievance. Dkt. No. 24, Ex. B, Hill Dep. 20-23. The evidence also shows that members are advised at monthly union meetings that grievances should be filed with the elected rank and file Grievance Representative, Joe Howard.

Baker responds that she did not believe the grievance system was effective because her oral complaints were ignored by Hill, and when she complained to Reid about Merrell's sexual harassment, giving specific details in front of other union members, Reid said that Merrell's conduct was not harassment, and that a header "can do whatever he wants to

AO 72A
(Rev. 8/82)

do." Dkt. No. 24, Ex. E at 14. Baker urges that it would have been futile for her to make formal complaints in light of the union officers' conduct.

Baker also reports that she did not realize that a formal grievance procedure existed before she filed a grievance in August 2005. The union rejoins that this is belied by the fact that Baker admitted that she knew in July 2003 that her coworker, Jimerson, "wrote up" Maurice Butler. Dkt. No. 24, Ex. E at 8.

Under certain circumstances, an employee's non-compliance with an internal grievance procedure may be reasonable. Frederick, 246 F.3d at 1314. Whether Baker complied with Local 1423's complaint procedure in a reasonable manner is a question of fact for the jury to determine. Breda, 222 F.3d at 890.

The record reveals that Baker made four complaints about sexual harassment to union officials. First, Baker complained to Hill in June and August of 2004 about Bacon's demands for sex in exchange for giving her jobs. Baker asserts that she did not make further complaints because nothing was done about the harassment, and Bacon continued to demand sex for jobs another ten to twelve times through

AO 72A
(Rev. 8/82)

the Fall of 2004. Plaintiff notes that there is no evidence that Bacon was removed from his header position in October 2004 because of her complaints.

The Court is cognizant that Baker's complaints about Bacon related to sexual harassment involving a tangible employment action, and the Faragher/Ellerth affirmative defense is not available in such circumstances. The Supreme Court has held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

Here, though, Baker does not attempt to revive stale quid pro quo claims by repackaging them as hostile work environment claims. Rather, she attempts to show that the grievance process was ineffective because Hill ignored her complaints about Bacon demanding sex in exchange for jobs. The Court concludes that Baker can rely on such evidence to show that her failure to use the grievance process was reasonable.

Such a conclusion recognizes that employment discrimination labels, and legal descriptions of various forms of harassment, have little practical import to

AO 72A
(Rev. 8/82)

laypersons. "[D]iscrete acts, including discriminatory and retaliatory acts, which may have been actionable on their own under Title VII, may still be considered in holding an employer liable for hostile work environment." Royal v. Potter, 416 F. Supp. 2d 442, 453 (S.D.W. Va. 2006); Mason v. S. Ill. Univ. at Carbondale, 233 F.3d 1036, 1044-45 (7th Cir. 2000).

Second, on August 20, 2004, Baker complained to a member of Local 1423's Executive Board, Samuel Oglesby, that Howard, the Grievance Representative, told her that she should have sex with him. Thereafter, Howard apologized and Baker made no further complaints against Howard.

Third, on November 3, 2004, Baker made an oral complaint to Reid about Merrell's sexual harassment of her. According to Baker, Reid told her that Merrell's conduct was not sexual harassment, and that a header "can do whatever he wants to do." Dkt. No. 24, Ex. C, Baker Dep. 20-22 (Jan. 19, 2006); Dkt. No. 24, Ex. E at 14.

Fourth, on August 21, 2005, Baker filed a written grievance against Janet Johnson, alleging that, earlier that day, Johnson had said that Baker and Jimerson were lesbians. The grievance committee held a hearing regarding this

21

grievance, and Baker, Jimerson, and Johnson were present. The committee denied the grievance because there were no other witnesses to the incident.

Whether union officials had constructive knowledge of the sexual harassment perpetrated by Baker's co-workers "is an issue of fact." Allen v. Tyson Foods, Inc., 121 F.3d 642, 647 (11th Cir. 1997). A plaintiff can prove constructive knowledge "by showing that the harassment was so pervasive that the employer" should have known about it. Id.

> [T]he following factors [are] germane to the issue of constructive notice of harassment: "(1) the remoteness of the location of the harassment as compared to the location of management; (2) whether the harassment occurs intermittently over a long period of time; (3) whether the victims were employed on a part-time or full-time basis; and (4) whether there were only a few, discrete instances of harassment.

Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1278-79 (11th Cir. 2002)(quoting Allen, 121 F.3d at 647).

The union may have constructive notice of harassment when it occurs daily, in the presence of others. Id. Viewing the evidence in the light most favorable to Baker, there is sufficient evidence to support a jury finding of constructive notice to the union of the sexual harassment by Baker's co-workers.

AO 72A
(Rev. 8/82)

In summary, considering all the incidents together, there is some evidence that supports Baker's contention that the harassment was widespread, continuous, and sufficiently severe or pervasive so as to unreasonably interfere with Baker's work performance. Baker has alleged "extensive, long lasting, unredressed, and uninhibited sexual threats or conduct that permeated" Baker's work environment. <u>Indest v. Freeman Decorating, Inc.</u>, 164 F.3d 258, 264 (5th Cir. 1999).

Whether the union took reasonable care to prevent and correct harassment is a question for the trier of fact. The union promulgated an anti-harassment policy, but there is no evidence that it was ever disseminated to Baker. In addition, it is unclear how widely the policy was distributed among union membership generally. <u>Miller</u>, 277 F.3d at 1279-80. Whether Baker unreasonably failed to use the grievance procedure with respect to her hostile work environment claims relating to Willie Bacon and Merrell is also a question of fact. The union is not entitled to summary judgment on the hostile work environment claim.

## C. Retaliation

23

AO 72A
(Rev. 8/82)

To make out a prima facie case of retaliation, Baker must show (1) that she made some statutorily protected expression, (2) that she suffered an adverse employment action, and (3) a casual link between the protected expression and the discrimination. <u>Freytes-Torres v. City of Sanford</u>, 270 Fed. App'x 885, 893 (11th Cir. 2008)

While the retaliation need not be "employment-related," it is not actionable unless the action is one that would be "materially adverse to a reasonable employee." <u>Burlington N. & Sante Fe Ry. v. White</u>, 548 U.S. 53, 67 & 57 (2006). To show a causal connection, the plaintiff must demonstrate that the decision-makers were aware of the protected conduct. <u>Gupta v. Fla. Bd. of Regents</u>, 212 F.3d 571, 590 (<u>abrogated on other grounds by White</u>, 548 U.S. at 57).

Baker urges that she was retaliated against when she was passed over for a job on two occasions based on her complaints of discrimination. On August 16, 2005, Baker filed the above-captioned case.

Baker contends that on August 14 and 18, 2005, Header Fred Sams called her home telephone twice about a job, but then gave the job to a casual worker, instead of her, on both occasions. Dkt. No. 24, Ex. D, Baker Dep. 143-48 (Mar. 21,

24

2006); Dkt No. 26, Exs. 3 & 4. During Baker's deposition, she said it was possible that Sams did this because she had filed this lawsuit. Baker has offered no other evidence that his conduct was motivated by her complaints.

As to the first incident, Baker's speculation is impossible, given that the incident occurred two days before her complaint was filed in this case. Baker has not suggested that Sams knew about her other complaints of harassment. There is no evidence that Sams had notice of Baker's complaints as to the incident on August 14, 2005. Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2004)(decision-maker must be aware of protected activity). Without some evidence, beyond her own personal speculation and vague allegations, Baker's retaliation claim fails. Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1355-56 (11th Cir. 1999).

With respect to the second instance, the Court may not consider this evidence because Baker failed to amend her complaint to assert this claim. Brown v. Snow, 440 F.3d 1259, 1266 (11th Cir. 2006). Summary judgment is proper in Defendant's favor as to Plaintiff's retaliation claim.

AO 72A
(Rev. 8/82)

## CONCLUSION

For the reasons explained above, Local 1423's motion for summary judgment is **GRANTED** in part, and **DENIED** in part. Dkt. No. 22.

**SO ORDERED**, this ___13th___ day of February, 2009.

_____

JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)